UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

DENNIS STRONG,

                      Plaintiff,

v.                                              Case No. 18-cv-82-pp

CITY OF APPLETON POLICE DEPARTMENT,
RYAN FERGOT, JORDAN WOELFEL, and
WISCONSIN MUNICIPAL MUTUAL INSURANCE CO.,

                      Defendants.

_____

**ORDER SCREENING COMPLAINT (DKT. NO. 1), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO 2), DENYING AS MOOT PLAINTIFF'S MOTION TO REASSIGN CASE (DKT. NO. 6), DENYING AS MOOT PLAINTIFF'S MOTION TO AMEND RELIEF (DKT. NO. 8), AND DISMISSING CASE WITHOUT PREJUDICE**

_____

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and resolves two other motions he filed, dkt. nos. 6 and 8. The court dismisses this case without prejudice because it is premature.

**I.**    **Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was in custody when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his case

1

without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

The court waived the initial partial filing fee. Dkt. No. 4. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will allow him to pay the $350 filing fee over time in the manner explained at the end of this order.

## II. Screening the Plaintiff's Complaint

### A. Federal Screening Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who allegedly deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. The Plaintiff's Allegations

The plaintiff has sued the City of Appleton Police Department, Appleton Police Officers Ryan Fergot and Jordan Woelfel, and the Wisconsin Municipal Mutual Insurance Company. Dkt. No. 1 at 1. He alleges that on March 21, 2017, the Appleton Police Department—specifically, defendant Woelfel—arrested him for alleged unlawful acts complained of by someone named "Willard." Dkt. No. 1-1 at 1, 9. The next day, the plaintiff made his initial appearance before the court in State v. Strong, Outagamie County Case Number 17CM282. Id.

The plaintiff alleges that Officer Fergot led the criminal investigation for Case 17CM282. Id. Fergot allegedly interviewed Willard, and had Officer Michael Chevremont (not a defendant) interview other material witnesses. Id. The plaintiff alleges that "[t]he exculpatory-impeachment material value of

Chevremont's trial testimony was paramount to Strong's defense based on the interview of material witnesses . . . ." Id. at 3.

The plaintiff says that on July 19, 2017, the Outagamie County Sheriff's Department served Chevremont with a subpoena to appear on the plaintiff's behalf "at the 7/25/17 and 7/26/17 jury trial dates." Id. at 2. The plaintiff then learned, however, that Chevremont would not be available on those dates "based on alleged military obligations." Id. So, at the July 24, 2017 pretrial conference, the plaintiff asked the state court to adjourn the trial. Id. at 3. The plaintiff does not say as much, but it appears that the state court granted that motion, and adjourned the trial to December 12 and 13, 2017.

The plaintiff states that on November 20, 2017, the Outagamie Sheriff's Department served a trial subpoena on defendant Fergot, requiring him to appear at the two-day, December 12-13 trial on behalf of the plaintiff. Id. The plaintiff says that at the eleventh hour—"late afternoon" at the pretrial conference on December 11, 2017—he found out that Fergot would not be available for the second day of the trial. Id. at 4. The plaintiff says that this precluded him from offering evidence under Wis. Stat. §972.10(3) (which states that the state offers evidence first, that the defendant may offer his evidence after the state has rested, and that the parties may offer rebuttal evidence). Id. According to the plaintiff, "[b]ased on the material value of Fergot's testimony to the defense, such lack of notice to Strong of Fergot's inability to appear on day [2] of the jury trial frustrated and impeded Strong's ability to adequately mount

4

a defense to allow for the full controversy to be fully tried before the jury." Id. at 5.

The plaintiff alleges that on the second day of trial, Chevremont testified that he had provided Fergot with "exculpatory-impeachment material evidence obtained from other witnesses" during the March 21, 2017 incident. Id. The plaintiff says that up to that point, this evidence "ultimately then had been on non-existence to neither Fergot's December 12, 2017, testimony or any reports authored summarizing the incident." Id. The plaintiff alleges that "[s]uch 'non-existence' of material evidence and/or reports extended to the notes being taken in a 'memo book' by Chevremont while interviewing said witnesses followed with the page being torn off and handed to Fergot as depicted in the Axon[1] on-officer recording device generated by Chevremont of the incident[.]" Id. at 6. The plaintiff says that he had explicitly requested "such memo book materials" in a discovery demand in early November 2017. Id.

According to the plaintiff, the "axon device on-officer recording" shows officers arriving at the location of Strong's arrest and "making a one time knock on the door with approximately a [7] tap knock before entering the dwelling." Id. He says that when they entered, the officers allegedly spoke to parties near the exterior door and, while inside the dwelling, officers and parties spoke quietly "while at times whispering or hand gesturing." Id. at 7. Then, officers allegedly quietly moved throughout the dwelling, opening two doors, and took the plaintiff into custody. Id.

---

[1] Axon is a company that manufactures body cameras and related devices. https://www.axon.com/products, last visited July 25, 2018.

The plaintiff says that while describing the officers' arrival and sweep in his testimony before the jury on December 12, 2017, Fergot testified that he announced "police" during this time "in a volume Fergot assured the jury to have been heard by the plaintiff." Id. The plaintiff alleges that "[s]uch is not the case and clearly depicted in the Axon on-officer device recordings, as at no point had any officer aside from Fergot made a 'Police' announcement in any form or fashion whatsoever from a whisper to outright spoken volume." Id. at 8. According to the plaintiff, Fergot's testimony "was an intentional act of injury to Strong's character and done so in an effort to set the mood for the jury to assume Strong was guilty for the alleged unlawful acts," because "an average person could construe that if an individual hears a 'Police' announcement and does not appear such is a result following an unlawful act." Id.

Next, the plaintiff alleges that Officer Woelfel testified at the jury trial on December 12, 2017 "that Strong had essentially been uncooperative while being placed in custody by not timely exiting a door Woelfel rapidly closed in Strong's face while Woelfel had an unholstered firearm pointed in Strong's direction." Id. at 9. Woelfel also allegedly testified that the plaintiff had an "aggressive" demeanor during the encounter and that he "engaged in 'several' and 'multiple' acts of having been 'aggressive' and/or 'threatening' towards the officer." Id. The plaintiff argues that whether he was "aggressive" or "very threatening" is a subjective one. He claims that based on the "Axon device on-officer recordings" of the interaction, "no reasonable competent officer would have concluded that Strong was either aggressive or threatening in the manner

6

testified to by Woelfel or in any manner at that." Id. at 10. According to the plaintiff, Woelfel's testimony "was a deliberate and malicious action intended to cause injury on Strong's character." Id. He states that the "damages of such were inflammatory and prejudicial to the jury's perception of Strong." Id. at 11.

The plaintiff argues that Fergot and Woelfel acted egregiously at his trial and that they knowingly, willfully, maliciously and recklessly deprived the plaintiff of his constitutional rights. Id. at 12. He also asserts that there was an "obvious strategic lack of notification to Strong on Fergot's inability to attend the 12/13/17 [2nd] day of jury trial." Id. For relief, the plaintiff seeks compensatory, exemplary and punitive damages. Dkt. No. 1 at 4. He also seeks injunctive and declaratory relief. Id.

After filing the initial complaint, the plaintiff moved to amend the relief he sought in complaint. Dkt. No. 8. He asked the court to amend the relief sought "to include collateral, declaratory, equitable, injunctive and prospective in addition to any other relief deemed just and proper by the court, aside from any monetary relief sought in the original complaint." Id.

Finally, on April 12, 2018, the plaintiff filed a one-page document titled "Amended Complaint." Dkt. No. 10. In this document, the plaintiff states that he "strikes the portion of the statement of facts alleging defendant Officer Ryan Fergot to have injured plaintiff's character by testimony at plaintiff's criminal jury trial of having announced a police presence." Id.

C. *The Court's Analysis*

The plaintiff's eleven-page complaint boils down to an argument that the jury should not have convicted him, because he could not prepare his defense and because Officers Fergot and Woelfel lied at trial.

In Heck v. Humphrey, the Supreme Court held that a plaintiff could not use §1983 to challenge his conviction in the first instance. In Heck, the Court stated that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994) (footnote omitted).

The plaintiff claims that Fergot's unavailability on the second day of his trial prevented the plaintiff from adequately maintaining his defense, and that Fergot and Woelfel knowingly testified falsely at his jury trial, to sway the jury to convict the plaintiff. (While it is not clear, the plaintiff may have been trying, in his April 12, 2018 "Amended Complaint," to withdraw that claim against Fergot.) The plaintiff claims that the defendants' actions violated his constitutional rights because they improperly influenced the jury, and that

their actions may have caused the jury to wrongfully convict him. If this court were to rule in the plaintiff's favor on any of these claims, that ruling would invalidate the plaintiff's conviction. So unless the plaintiff can show that some other court has reversed, expunged or invalidated his conviction, his claims are barred by Heck. See also Moore v. Burge, 771 F.3d 444, 446 (7th Cir. 2014) (Heck bars plaintiffs' §1983 claim that police violated their rights by giving false testimony).

The plaintiff filed this federal complaint on January 16, 2018—the state court did not sentence him until three months later, on March 15, 2018. State v. Strong, 17CM282, Outagamie County Circuit Court, located at https://wcca.wicourts.gov. While he may have done so, the court sees no indication on the state court docket that he has appealed his conviction and sentence; certainly there is no indication that his conviction has been reversed by the circuit court or the Wisconsin Court of Appeals. The plaintiff has not alleged that an executive order expunged his conviction. He has not provided this court with any order showing that some other court has invalidated his conviction.

Finally, in the past year, the plaintiff has filed seven cases here in federal court (including this one): Strong v. Wisconsin Dep't. of Corrections, *et al.*, 17-cv-967-NJ; Strong v. Thompson, 17-cv-891-JPS; Strong v. Corrigan, *et al.*, 17-cv-1063-pp; Strong v. Wis. State Pub. Def., *et al.*, 17-cv-1714-pp; Strong v. Wis. Dep't. of Admin., *et al.*, 17-cv-1765-pp; Strong v. City of Appleton Police Dep't., *et al.*, 18-cv-82-pp (this case); and Strong v. Outagamie Cty. Sheriff's

Department, *et al.*, 18-cv-237-pp. None of these cases asked the court to issue a writ of *habeas corpus* under 28 U.S.C. §2254, and the plaintiff has not showed that any other federal court has invalidated his conviction under §2254. The court holds that, at this stage, the plaintiff's case is barred by Heck v. Humphrey.

If the plaintiff wants this federal court to consider his claims, he first must exhaust his state court remedies. That means that he must appeal his state conviction all the way through the Wisconsin Court of Appeals and the Wisconsin Supreme Court. Once he finishes his appeal, the plaintiff may consider whether he wants to file a federal *habeas* petition under §2254 or a claim for money damages under §1983. If the plaintiff decides to file a federal *habeas* petition, he will have to show that he has exhausted his remedies, and he must make sure that he timely files his petition under 28 U.S.C. §2244(d). The court will mail the plaintiff a *pro se* guide, Habeas Corpus: Answers to State Petitioners' Common Questions, along with this order.

D.  *Request to Reassign Case*

About three weeks after the court received the plaintiff's complaint, the clerk's office received a letter the plaintiff had written to Chief Judge William Griesbach, asking Judge Griesbach to reassign this case to another judge. Dkt. No. 6. The letter stated that the plaintiff would provide specific reasons for his request, if needed. Id. He went on to state that he had filed six cases in the Eastern District, and that in two of them (17-cv-967 and 17-cv-1063) a "great amount of time" has passed and the court had not processed them. Id. Since

the plaintiff filed his letter, Magistrate Judge Joseph screened Case 17-cv-967; the court has closed that case. This court has not yet screened case 17-cv-1063. It hopes to do so as soon as possible, but the court has a heavy case load, and there many cases it needs to process. Because this complaint is premature, the court will dismiss it, which means that the plaintiff's motion to reassign the case is moot.

III. **Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion to reassign the case. Dkt. No. 6.

The court **DENIES AS MOOT** the plaintiff's motion to amend relief. Dkt. No. 8.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**.

The court includes with this order a copy of the *pro se* guide, Habeas Corpus: Answers to State Petitioners' Common Questions.

The court **ORDERS** that the agency that has custody of the plaintiff will collect from his institution trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency will identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution will forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the warden of Redgranite Correctional Institution.

Dated in Milwaukee, Wisconsin this 25th day of July, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**